CAROLYN POCKETT

v.

NATIONAL GRANGE MUTUAL INSURANCE COMPANY

July 2, 1984

*Bragdon, Berkson & Mangones*, of Keene (*H. Neil Berkson* on the brief and orally), for the plaintiff.

*Wiggin & Nourie*, of Manchester (*Gregory A. Holmes* on the brief and orally), for the defendant.

BROCK, J.   The plaintiff in this negligence action, Carolyn Pockett, suffered serious injuries in an automobile accident in 1979, sustaining damages allegedly in excess of $100,000. She was covered

under an automobile liability insurance policy issued to her daughter Susan Pockett by Susan's employer, the defendant National Grange Mutual Insurance Company. However, the plaintiff received no compensation under this policy because it included uninsured/underinsured motorist (U.M.) coverage in the amount of only $20,000 per individual or $40,000 per accident—the statutory minimum. Since the plaintiff recovered $20,000 from the insurance carrier for the driver responsible for the accident, National Grange was not obligated to provide additional compensation under the terms of its policy.

The principal questions before us on appeal are: (1) whether National Grange was negligent in failing to advise Susan Pockett to purchase more than the minimum U.M. coverage, particularly when she requested and received maximum coverage for bodily injury liability; and (2), if so, whether this advice would have led Susan to purchase the maximum limits ($100,000 per individual/$300,000 per accident), thus providing $80,000 of additional coverage to the plaintiff in this case. The Superior Court (*Dalianis*, J.) answered both questions in the negative and found no liability in National Grange. We affirm.

National Grange sold auto insurance to its employees at a cost fifteen percent lower than the cost specified on the face of the policy. This "discount" represented the amount of an agent's commission, which was not charged to employees because they purchased their insurance directly from the company. The agent on these employee policies was listed as "Leslie Carlton," a fictitious entity not licensed as an agency but used by National Grange merely to identify employee policies.

Susan Pockett purchased her auto insurance policy in 1976, during an approximately ten-minute interview with Gerald Ganley, an underwriter for National Grange. Susan's only specific memory of the interview was that, on the advice of a fellow employee, she had requested maximum coverage for bodily injury liability and medical payments coverage.

Susan further testified that she bought the policy because she had just purchased her first car (a used Ford Fairlane priced at $100), and her father would not let her drive it without insurance. She stated that minimizing her premium was one of her considerations in buying the policy. She also testified that, when her policy with National Grange expired in 1980 after her mother's accident, she allowed the policy to be renewed without increasing the U.M. limits to the maximum because she was unwilling to pay the additional premium of $6.80 annually.

Gerald Ganley had no specific memory of his interview with Susan Pockett, but he testified that his normal routine in such interviews was to inform the employee what coverages were available, and then to draw up a policy in accordance with the employee's wishes. He stated that he normally pointed out to each employee the full range of U.M. coverage available and that it was his standard practice not to recommend any particular level of coverage.

Susan's policy was renewed each year. The plaintiff introduced evidence that, starting in 1977, other insurance companies adopted a practice of either recommending or requiring that a policy's U.M. coverage be equal to its bodily injury coverage. At least one agency automatically increased the U.M. coverage on all of its renewed policies to match the bodily injury coverage.

■ The plaintiff alleges that National Grange violated RSA 402:26 (Supp. 1983) (by selling insurance through an unlicensed "agency") and RSA 417:4, XII (by collecting a premium less than that specified in the policy). Assuming National Grange had the same or a greater duty of care to its employee, and breached it, as if it were an independent agent, this plaintiff cannot recover because she failed to prove that this breach was a cause of her damages. *Jutras v. Scanlon Co.*, 106 N.H. 130, 133, 206 A.2d 615, 616 (1965).

The trial court denied the plaintiff's request for a finding that "[i]f Susan had received the proper information and advice from the Grange at the proper time, her U.M. limits would have been equal to her B.I. limits of $100,000/$300,000 prior to December 30, 1979." The court granted the defendant's request for a finding that "no causal connection exists between National Grange's actions and the plaintiff's damages."

■ These findings are amply supported by Susan Pockett's testimony that she wished to minimize her insurance premiums, and by her failure to purchase higher U.M. coverage when she renewed her policy *after* her mother's accident. The court could have inferred that Susan Pockett would have purchased the minimum U.M. coverage even if Ganley had advised her against it. "Since the Trial Court had the advantage of seeing and hearing the witnesses on the stand, we do not set aside the verdict merely because on the cold record we might draw different inferences on questions of fact." *Powell v. Gagne*, 102 N.H. 256, 257, 154 A.2d 750, 751 (1959).

*Affirmed.*

All concurred.